UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHREE NARAYAN I, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-01481-TWP-DKL |
| ) | |
| INDIANA BANK CORP, d/b/a BANK ) | |
| OF INDIANA, NATIONAL ) | |
| ASSOCIATION ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON MOTION TO DISMISS**

The Plaintiff in this dispute is Shree Narayan I, Inc. ("Shree"), an Indiana corporation that operates a convenience store business. Shree's owner is Tejashkumar Patel ("Mr. Patel"). The Defendant in this dispute is Indiana Bank Corp., ("IBC" or "Defendant"), an Indiana corporation and sole shareholder of Bank of Indiana ("BOI"), a National Banking Association with its principal office in Dana, Indiana. In the caption of its complaint, Shree described IBC as doing business as BOI.

The gist of Shree's allegations is that an officer and employee of BOI, Jay Reynolds ("Mr. Reynolds"), made material misrepresentations or failed to disclose material information regarding the loan he issued to Shree. Specifically, Mr. Reynolds "concocted fraudulent appraisals and business valuations for the purpose of overvaluing" Shree's operations. (Dkt. #1 at 3.) On August 29, 2011, Shree filed a seven-count verified complaint, which included claims for promissory estoppel, breach of contract, unlawful interference with business opportunities, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, and a violation of the Equal Credit Opportunity Act ("ECOA"). This matter now comes before the Court on IBC's Motion to Dismiss.

## I. BACKGROUND

Mr. Patel is an immigrant from India. After moving to the United States, Mr. Patel, with the help of family and friends, started a convenience store business. Mr. Patel alleges that Mr. Reynolds, acting on behalf of IBC as its president and chief financial officer, persuaded him to set up a corporation and enter into the financial transaction that is the subject of this action. According to Shree, Mr. Patel "is illiterate as to the English language and United States banking rules and regulations." (Dkt. #23 at 2.)

In February 2007, Mr. Reynolds became "Lafayette Community President" of BOI. Mr. Reynolds served in this capacity until February 2008, when he was terminated without cause. Subsequently, BOI discovered that, during his tenure, Mr. Reynolds "made material misrepresentations or failed to disclose material information with respect to loans, including the loan to [Shree] which is the subject of this litigation." (Dkt. #1 at 2). Specifically, Mr. Reynolds valued Shree's business at $4.2 million, when, in reality, "the actual price valuation had been established at $2.8 million" – a $1.4 million difference. From there, Shree alleges that Mr. Reynolds submitted a false Customer Loan Approval Memorandum (a "CLAM") to the BOI Board of Directors Loan Committee, who approved the loan at issue as a result of the CLAM.

By overvaluing the loan, Shree alleges the Defendant was able "to collect excessive charges and officer commissions" from Shree. (Dkt. #1 at 8.) According to Shree, Defendant effectively forced it to incur "debts in excess of $1,400,000 overvalued more than was accurate," thus damaging "Shree in an amount in excess of $1,400,000." (Dkt. #1 at 11). Further, and more generally, Shree alleges that Defendant "promised opportunity for financial success" and promised "to establish a sound financial business plan," but failed to fulfill these promises. (Dkt. #1 at 5-6.) Additional allegations will be added below as needed.

## II. LEGAL STANDARD

When reviewing a Rule 12(b)(6) motion, the Court takes all well-pleaded facts alleged in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). The factual allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## III. DISCUSSION

IBC makes four basic arguments in favor of dismissing Shree's complaint. First, Shree sued the wrong defendant. Second, Shree lacks standing. Third, many of Shree's claims are barred by Indiana Code § 26-2-9-4. Fourth, all of Shree's individual claims are fatally defective because they fail to state plausible claims under common law. Each argument is addressed in turn.

**A.   Who is the right Defendant?**

Through the complaint, Shree sued IBC, not BOI. But, curiously, most of its allegations are squarely directed at BOI. Accordingly, IBC contends that Shree's complaint fails to state an actionable claim against IBC. Shree's apparent confusion on this point is perhaps understandable, as BOI and IBC appear to be inextricably linked. IBC is the sole shareholder of

BOI, and Mr. Reynolds served as a member of the Board for both IBC and BOI. That said, and as IBC notes, IBC and BOI "are distinct and separate legal entities." (Dkt. #14 at 2). By suing IBC "doing business as" BOI, the argument goes, Shree failed to state an actionable claim against IBC.

To this, Shree appears to tacitly acknowledge that it made a mistake, writing that it seemingly became confused because "the two entities are interrelated, each interacting [on] behalf of the other." (Dkt. #23 at 3). Accordingly, "Shree requests that this Court give Shree the opportunity to amend Shree's Complaint to identify the appropriate defendants." *Id*. The Court will heed this request. But for the sake of thoroughness and clarity, the Court will also address IBC's remaining arguments. Hopefully, this will aid the parties going forward.

**B.     Does Shree have standing?**

IBC next argues that Shree lacks standing for its claims involving CLAM-related representations. IBC emphasizes that these representations were made by Mr. Reynolds to the BOI Board of Directors Loan Committee; they were not actually made to Shree. Therefore, IBC argues that Shree lacks standing to sue based on these representations.

Obviously, standing is an essential component of Article III's case-or-controversy requirement. To demonstrate standing, Shree bears the burden of proving three elements:

> First, Shree must have suffered an 'injury in fact'– an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'
>
> Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'
>
> Third, it must be 'likely', as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (emphasis added; internal citations and alterations omitted). If Shree does not have standing, the complaint must be dismissed.

In the Court's view, Shree has standing to sue. After all, if Shree wins, it "will obtain a tangible benefit." *See Harzewski v. Guidant*, 489 F.3d 799, 803 (7th Cir. 2007) ("Obviously the named plaintiffs have standing to sue in the sense of being entitled to ask for an exercise of the judicial power of the United States as that term in Article III of the Constitution has been interpreted, because if they win they will obtain a tangible benefit."). Moreover, the source of Shree's injury is clearly traceable to Defendant. Although Shree's complaint is somewhat difficult to decipher, the upshot of its allegations seems to be that Defendant unlawfully made an inflated loan, thereby forcing Shree to pay more than it should have been required to pay. Finally, the Court can redress Shree's injury by awarding money damages. At bottom, the Court finds that Defendant's standing argument fails. Standing only relates to "whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Here, that modest requirement has been met. Any deficiencies in the claims themselves are best addressed through a Rule 12(b)(6) motion.

**C.     Are some of Shree's claims barred by Indiana Code § 26-2-9-4(b)?**

As mentioned, throughout its complaint, Shree alleges that BOI made certain promises regarding Shree's financial success and providing Shree with a sound financial business plan. Shree does not specify whether these promises were oral or in writing. As IBC highlights, Ind. Code § 26-2-9-4 effectively codifies the statute of frauds in the context of lending. Specifically, it provides that a debtor may not assert a claim or defense against a lender arising from a credit agreement, unless the agreement "is in writing," "is signed by the creditor and the debtor," and

5

"sets forth all material terms and conditions of the credit agreement." *See* Ind. Code § 26-2-9-4(b).

Simply stated, Shree has failed to produce an agreement, signed by both Shree and IBC, which sets forth the terms and conditions of any such promises. Instead, Shree's response brief – under the heading "An Actionable Claim is Stated Pursuant to Indiana Code § 26-2-9" – merely recites the elements of fraudulent misrepresentation (without citing to any authority). (Dkt. #23 at 4.) The skeletal response is not helpful. Accordingly, the Court agrees with IBC that many of Shree's claims (promissory estoppel, breach of contract, unlawful interference with business opportunities, fraudulent misrepresentation, and negligent misrepresentation) are not actionable to the extent they are based upon these vague promises regarding financial success and a sound financial business plan.

**D.     Are Shree's claims plausible?**

As IBC notes, many of Shree's claims are fatally defective. First up is Shree's promissory estoppel claim. This claim appears entirely based on the vague promises regarding financial success and planning discussed above. *See* Compl. ¶ 21 ("Defendant established a fraudulent financial foundation for Shree's business operations. Defendant promised opportunity for financial success; in reality, Defendant established Shree's business operations to fail with no chance of success."). Consequently, as discussed above, this claim seemingly fails due to the applicability of Indiana Code § 26-2-9-4(b). And, statute of frauds issues aside, it is worth noting that this promise is probably far too vague to be actionable under a promissory estoppel theory. *See, e.g., Garwood Packaging, Inc. v. Allen & Co., Inc.*, 378 F.3d 698, 702-03 (7th Cir. 2004); *Sofaer Global Hedge Fund v. Brightpoint, Inc.*, 2011 WL 2413831, at *12 (S.D. Ind. June 10, 2011) (a promise that a deal was "99.9% done" was not sufficiently definite for purposes of a

promissory estoppel claim).  Accordingly, Count 1 (for promissory estoppel), in its current form, must be dismissed.

Second, Shree's breach of contract claim suffers from similar flaws. The complaint alleges that "Defendant failed to satisfy [its] contract promise to establish a sound financial business plan by creating the fraudulent creation of a non-existent financial entity shell of Shree's business operations." (Dkt. #1 at 6).  But, tellingly, Shree has failed to furnish the Court with a written agreement setting forth such obligations to provide "a sound financial business plan."  Shree has attached a loan agreement for $3,360,000.00; however, this agreement does not mention obligations relating to a financial business plan.  Thus, Shree has failed to establish the existence of a contract requiring BOI to establish a sound financial business plan.  Because the existence of a contract is essential to a breach of contract claim, *see Brown v. Guinn*, 970 N.E.2d 192, 196 (Ind. Ct. App. 2012), Count 2 (for breach of contract), in its current form, must be dismissed.

Third, Shree claims that IBC unlawfully interfered with its business opportunities.  Once again, Shree's allegations are exceedingly vague; its focus is on Defendant's failure "to follow through" with "promises as set forth herein and in setting up the fraudulent financial basis[.]" (Dkt. # 1 at 7). Notably, however, it is well-settled that a claim for intentional interference with business opportunity is not actionable if the entity "alleged to have interfered with the prospective advantage [is the entity] alleged to have created the expectancy through prior representations and assurances." *Kiyose v. Trustees of Indiana University*, 333 N.E.2d 886, 891 (Ind. Ct. App. 1975).  Here, Shree is alleging that BOI both created the expectancy for business opportunity through its promises *and* interfered with the business opportunity.  This renders

Shree's claim untenable as a matter of law. Accordingly, Count 3, in its current form, must be dismissed.

Fourth, Shree's Count 4 relates to quantum meruit (unjust enrichment). Unjust enrichment is a quasi-contractual remedy designed to ameliorate injustice. "To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Coleman v. Coleman*, 949 N.E.2d 860, 866 (Ind. Ct. App. 2011) (citations and internal quotations omitted). The requirements for a recovery under this theory are not extensive: it "only requires the plaintiff to establish that the defendant impliedly or expressly requested the benefits be conferred." *Id*. (citation omitted). In other words, this claim is based on the notion that "[o]ne who labors without an expectation of payment cannot recover in quasi-contract." *Id*. (citation and internal quotations omitted).

At this time, the Court is not yet persuaded that Shree has stated a viable claim for unjust enrichment. Shree's complaint merely states that "[a]s a direct result of Defendant's fraudulent construction of the non-existent financial shell of Shree's business operations and through the unlawful assessment of fees and late charges in excess of $100,000.00 Defendant secured unlawful profits and incentives for Defendant and Defendant's loan officers." (Dkt. #1 at 8). If Shree is going to state a viable claim, it needs to state, in some fashion, that: (1) Defendants expressly or impliedly requested that a benefit be conferred, (2) that Shree did confer that benefit, and (3) that the retention of that benefit by Defendant would in fact be unjust. As it stands, the Court cannot easily trace the path of Shree's allegations and why they amount to an unjust enrichment claim. Given this lack of cogency, Count 4, in its current form, must be dismissed.

Fifth, Shree alleges a fraud claim. But despite the requirement for heightened pleading, *see* Fed. R. Civ. P. 9(b), Shree's allegations are vague. To plead fraud with the requisite particularity, Shree must provide more than conclusory allegations. Instead, Shree must detail "the who, what, when, where, and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Stated differently, Shree must "identi[fy] . . . the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003) (citation and internal quotations omitted). Suffice it to say, Shree's complaint lacks the requisite particularity. Accordingly, Count 5, in its current form, must be dismissed.

Sixth, Shree brings a claim under the subheading of "Negligent Misrepresentation." However, Shree's allegations under this subheading are nothing more than a verbatim copy of its fraud allegations. *See* Compl. ¶¶ 35, 38. Accordingly, this claim – which does not even mention the word negligence in the allegations – must fail. Count 6, in its current form, is therefore dismissed.

Seventh, Shree alleges that Defendant has violated the ECOA. Although Shree does not directly state it, the focal point of Shree's allegation appears to be that the Defendant made an inflated loan to Shree because of Mr. Patel's national origin. There is a fundamental problem with Shree's allegations. Specifically, Shree does not name the specific provision of the ECOA under which it is proceeding; nor does Shree explain, with any specificity whatsoever, how Defendant's conduct violated the ECOA. In other words, Shree's complaint does not meet the "short and plain" pleading requirement of Fed. R. Civ. P. 8, and does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Pisciotta*, 499 F.3d at 633;

*see also Dixon v. Countrywide Home Loans, Inc.*, 710 F. Supp. 2d 1325, 1329 (S.D. Fla. 2010). Accordingly, Count 7, in its current form, must be dismissed.

But, in making this ruling, the Court must add a point of clarification. IBC argues that Shree's ECOA claim must fail as a matter of law because Shree did not suffer an adverse action to support a claim of discrimination because Shree was not *denied* a loan; to the contrary, Shree was *granted* a loan. And, on this point, Shree's response brief did itself no favors, as it failed to respond to this argument in a meaningful way. Instead, Shree just wrote that it had "well plead the elements of this cause of action in its Complaint" and "[t]his Act was recently legislated for the express purpose of protecting borrowers such as Shree" – nothing more. (Dkt. #23 at 8.) Such a bare-bones argument is woefully inadequate.

Nonetheless, the Court, based on its own research, is not persuaded by IBC's argument that the denial of a loan is a prerequisite to a claim under the ECOA. From what the Court can gather, the ECOA does not necessarily require a *denial* of a loan application for a claim to be actionable. *See, e.g., Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827, 833-34 (N.D. Ill. 2007) (recognizing that the ECOA "clearly do[es] *not* require a denial of credit"). Instead, a loan rejection based on national origin is just one sufficient form of discrimination under the ECOA. *See id*. at 834. Notably, 15 U.S.C. § 1691(a) bars discrimination as it applies to "any aspect of a credit transaction." Thus, if Shree alleged that its loan was made on less favorable terms and conditions than others because of its owner's national origin, then presumably it would state a claim under the ECOA. But because Shree has not done this (at least not expressly), Count 7 must be dismissed, for now.

Finally, it is questionable whether Shree attempts to bring a claim under Title VII. And even if Shree did attempt to bring such a claim, it was inadequate under Rule 8. After all, Title VII relates to *employment* practices. Nothing suggests that IBC acted as Shree's employer.

## IV. CONCLUSION

Shree may well have claims for a valid cause of action, however not in its present form. For the reasons set forth above, IBC's Motion to Dismiss (Dkt. 13) is **GRANTED** without prejudice. In light of the Court's ruling, IBC's Motion to Strike Shree's Response to Motion to Dismiss (Dkt. 24) is **DENIED** as moot. Shree will have 14 days from the date of this entry to file an amended complaint.

SO ORDERED.   08/06/2012

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

T. Michael Doyle
DOYLE & MALINZAK, P.C.
tmichael06t@aol.com

Raegan Mackenzie Gibson
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
rgibson@beneschlaw.com

Mark R. Waterfill
BENESCH, FRIEDLANDER, COPLAN, & ARONOFF, LLP
mwaterfill@beneschlaw.com